IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BENITO CARDENAS-HERNANDEZ                                               PLAINTIFF

          v.                              Civil No. 06-2151

OFFICER McHENRY; SGT. RITTER;
SGT. MOORE; OFFICER PRUITT;
SHERIFF FRANK ATKINSON; and
NURSE CRYSTAL REED                                                     DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Plaintiff is currently incarcerated in a Federal Correctional Complex. The events at issue in this lawsuit occurred while the plaintiff was incarcerated at the Sebastian County Detention Center. Plaintiff contends he was denied adequate medical care.

Defendants filed a summary judgment motion (Doc. 25). To assist plaintiff in responding to the motion, a questionnaire was propounded (Doc. 28). Plaintiff filed a response to the questionnaire (Doc. 29). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

## Background

Plaintiff was booked into the Sebastian County Detention Center (SCDC) on a hold for the United States Marshal Service on May 11, 2006. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. He remained incarcerated at the SCDC until October 23, 2006, when he was released to the United States Marshal Service. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at page 3.

-1-

AO72A
(Rev. 8/82)

When Plaintiff was booked in on May 11th, a medical questionnaire was completed. *Resp.* at ¶ 3. He indicated he had no health problems. *Id.* To obtain non-emergency medical care at the SCDC, an inmate is required to submit a written request for medical care. *Resp.* at ¶ 31(A).

On June 24th he submitted a grievance stating that his commissary order was short. *Resp.* at ¶ 4. In response, he was told that he would get the items he had been shorted when they came in. *Id.*

On July 1st Plaintiff submitted a grievance stating that his toe had been hurting "real bad" for the last five days. *Resp.* at ¶ 5. He stated he had asked for something for pain. *Id.* He indicated the pain had started to go up into his leg. *Id.* He stated no officer would get him any help. *Id.* He indicated he had money and could pay for the hospital bill. *Id.* He stated he needed help now. *Id.*

On July 2nd the shift sergeant responded that Plaintiff had been looked at yesterday. *Resp.* at ¶ 6. He also told Plaintiff to fill out a medical slip. *Id.*

Plaintiff was seen by Nurse Crystal Reed on July 3rd. *Resp.* at ¶ 8. She noted that the fourth toe on his right foot had an open wound and a red/black area with pus drainage. *Id.* She sent him to Pro-Med for antibiotics. *Id.*

Plaintiff was taken to Pro-Med Clinic and seen by Dr. Mouhammed Sheikha. *Resp.* at ¶ 9(A). He was diagnosed with severe athletic's foot with pus between the third and fourth toes and swelling of the right foot. *Id.* at ¶ 9(B). A culture was taken. *Id.* He was prescribed Cleocin, Lamisil Cream, and Nizoral. *Id.* at ¶ 9(C). Plaintiff received the prescribed medication.

-2-

*Id.* at ¶ 9(D).  The culture was found to be positive for staphylococcus aureus.  *Defts' Ex.* 4 at page 5.

Nurse Reed reported on July 5th that plaintiff had been seen at the doctor's office on Monday evening and his prescriptions sent to the pharmacy when it opened.  *Resp.* at ¶ 10.  On July 7th, Nurse Reed noted that per the health department Plaintiff was to have three sputums and follow-up with a chest x-ray in two months due to an abnormal x-ray.  *Id.* at ¶ 11.

On July 9th Plaintiff requested nurse call.  *Resp.* at ¶ 13(A).  On July 11th Nurse Reed noted that Plaintiff needed to follow-up with the doctor and that he had "a sore to ankle above toe that is being [treated] for infection."  *Id.* at ¶ 13(B).  Plaintiff was taken by the United States Marshal Service to Pro-Med that day for treatment.  *Id.* at ¶ 13(C).

Plaintiff was treated at Pro-Med for a follow-up on the fungal infection on his feet/toes plus the staph.  *Resp.* at ¶ 14(A).  It is also noted that he had a spider bite on his right ankle.  *Id.*  A note was made that he was better but still needed the antibiotics.  *Id.*  Dr. Sheikha prescribed Lamisil, Nizoral, Bactrim, and Tetracycline.  *Id.* at ¶ 14(B).  Plaintiff indicates he cannot say whether or not he received the prescribed medication because he cannot read the medication logs submitted by the defendants as an exhibit.  *See Defts' Ex.* 3 at pages 19-24.

After being seen at Pro-Med, plaintiff was placed in a hospital cell.  *Resp.* at ¶ 16.  Dr. Tinsman, the jail doctor, treated plaintiff on July 25th.  *Resp.* at ¶ 17(A).  He was complaining about two spider bites, his right fourth toe, and above his right ankle.  *Id.*  He indicated he had lower abdomen pain and could not eat anything without vomiting.  *Id.*  Dr. Tinsman directed that plaintiff be taken to the emergency room for evaluation of a possible systemic infection.  *Id.*

AO72A
(Rev. 8/82)

Plaintiff was treated at the emergency room of Sparks Regional Medical Center on July 25th. *Resp.* at ¶ 17(B). According to defendants records, when he was seen at the emergency room, Plaintiff told the emergency room doctor that he needed pain medication and stated that he had not been vomiting. *Defts' Ex.* 3 at page 15. Plaintiff, however, states he told the emergency room doctor that he had been throwing up. *Resp.* at ¶ 17(C). Plaintiff received prescriptions on July 25th for Bactrim and Ultram. *Defts' Ex. 3* at pages 19-24.

On July 31st plaintiff submitted a grievance stating that he had not received any of his grievance forms back for over a month. *Resp.* at ¶ 18(A). He stated he needed them back to file a § 1983 case. *Id.* In response, the shift sergeant wrote that he provided Plaintiff with a second copy of his grievances. *Id.*

Prescriptions for sulfamethoxazole and tramadol were filled at Vaughan's on July 26th and logged by Nurse Bass on August 2nd. *Resp.* at ¶ 19.

On August 6th, plaintiff completed the lower part of the grievance form dated July 1st referred to as step C indicating the problem had not been resolved. *Resp.* at ¶ 7. In response, on August 8th, the jail administrator, Lt. Jackson, wrote that plaintiff had been seen by Dr. Tinsman and sent to the emergency room. *Id.* She told plaintiff to fill out a request to see the nurse. *Id.*

On August 9th, plaintiff submitted a grievance in which he complained his breakfast tray was dirty. *Resp.* at ¶ 20. He also complained that he had been charged for medical care despite being a federal detainee. *Id.* In response, he was told that the kitchen had been spoken to. *Id.* With respect to the medical charges, he was told the Marshals did not pay his co-pay and he would be charged to see the nurse. *Id.*

-4-

On August 17th, plaintiff submitted a grievance stating he had received Efferdent on his commissary order. *Resp.* at ¶ 21(A). He stated he did not order this. *Id.* He also indicated he was still owed soup. *Id.* The shift sergeant responded that the commissary form had been filled out for Efferdent and that plaintiff would not receive his money back. *Id.* at ¶ 21(B). Plaintiff was not satisfied with this response and filled out step C of the grievance. *Id.* at ¶ 21(C). Lt. Jackson responded that she was having the commissary workers check on this. *Id.*

On September 10th plaintiff complained again that he was concerned about some commissary items he purchased–including $62 worth of Efferdent. *Resp.* at ¶ 22(A). He stated he had agreed to pay for $31 which was his mistake that the officers had taken all $62 worth and he would like $31 worth of credit. *Id.* He also said he never got his ten soups or credit for them. *Id.* In response, plaintiff was told he had received $31 worth of credit. *Id.* at ¶ 22(B). He was also told the soups would be checked on. *Id.*

Plaintiff was asked to describe in detail how Officer McHenry exhibited deliberate indifference to his serious medical needs. Plaintiff responded:

> By June 26, 2006, my toe had become severely infected and extreamly painful; although I had previously asked officer McHenry for asprin; on 26 June 2006, at aprox. 6:00 p.m., I again asked officer McHenry for asprin for may pain, which he refused and refused to give me a medical and a grevence form. On 29 June 2006, I obtained a medical request form (from another inmate) and asked officer McHenry to take me to the emergency medical room, as I showed him toe that was draining blood an pus. Officer McHenry responded that my condition "was not life threatening" or "a matter of life and death" and if "I did not like it-fill out a grevence form". I did and have never received an answer.

*Resp.* at ¶ 23.

Plaintiff was asked to describe in detail how Sgt. Ritter exhibited deliberate indifference to his serious medical needs. Plaintiff responded:

-5-

> On 1 July 2006, about 9:00 p.m. I spoke with Sgt. Ritter, the shift sargent, that I needed medical attention as my foot was draining blood and pus, to please take me to the medecial emergency room.  Sgt. Ritter refused both medical attention and to take me to the emergency room; or any bandages and something to clean up the running mess that the blood and pus was leaving over the cell and my bed. He responded to my grevence that the nurse was to see me on 2 July 2006. Because of the hoiliday, it was not until 3 July 2006 that I was seen, some 4 days later (See:  Medical treatment report No. 06-0951-01).

*Resp.* at ¶ 24.

Plaintiff was asked to describe in detail how Sgt. Moore exhibited deliberate indifference to his serious medical needs.  He responded:

> On 17 July 2006, when I was in the hospital cell, after summoning sgt. Moore, I informed him and showed him that my foot was draining blood and pus; I told him that I needed cleaning materials, bandages and to keep the wond clean.  He commented "how gross" and how "bad" my foot smelled, but refused both any bandages and asprin and refused to notify the nurse; then walked out.

*Resp.* at ¶ 25.

Plaintiff was asked to describe in detail how Officer Pruitt exhibited deliberate indifference to his serious medical needs.  He responded:

> On the night shift of 1-2 July 2006, I asked officer Pruitt to take me to the emergency room because of the severe pain in my foot, bleeding and pus.  Officer Pruitt stated that I had to see Sgt. Ritter.  Sgt. Ritter, when he showed up, stated that had to ask Sgt. Pruitt and that I had to file a medical slip to be seen by any medical–then he walked off.  I saw neither officer Pruitt nor Sgt. Ritter after that, that night.

*Resp.* at ¶ 26.

Plaintiff was asked to describe in detail how Sheriff Atkinson exhibited deliberate indifference to his serious medical needs.  He responded:

> I do not remember ever having spoken with sheriff Atkinson; nor has he ever (personally) answered any of my grevience requests, or any medical form/request. He is responsible for the training of his staff, policy pertaining to inmate medical

-6-

problems, policy of his staff pertaining to medical responses/care of inmated within his jail and sanitation of the jail (or lack thereof) which aggervated the infection and staff infection.  spiders, etc; which was both a direct and indirect cause of my pain and suffering.

*Resp.* at ¶ 27.

Plaintiff was asked to describe in detail how Nurse Reed exhibited deliberate indifference to his serious medical needs.  He responded:

On 30 June 2006, I filled out a medical slip to see medical because of the pain and dranage of blood and pus from the open wond on my foot.  Both officers McHenry and Pruitt stated, to me, that nurse Reed was "fed up with you" and that "you have to wait until Monday to see her-if she feels like it".  By 3 July 2006 another inmate also asked McHenry and Pruitt to take me to see the nurse (Reed)- as my wond was draining blood and pus; I was taken to the nurse, but when she saw me she refused to clean the blood/pus or even to touch the area of the wond as it was so bad at that point–she then said that she was calling the US marshals to take me to a doctor's office.  It was ONLY after the infection became so horendious that she had a doctor look at my foot.

*Resp.* at ¶ 28.

Plaintiff was asked if he suffered injury as a result of the delay in his receiving medical care.  He responded that he did.  *Resp.* at ¶ 34.  He indicates he suffered extreme pain from the infection resulting from the open wound above his toe.  *Id.*  Had he received treatment sooner, he maintains the infection would not have progressed to the extent it did.  *Id.*  In support, he offers as exhibits photographs of the wound.  *Plaintiff's Exhibits* 1-3.  He indicates he still has a scar from the infection.  *Id.*

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that

-7-

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

Defendants have now moved for summary judgment.  First, defendants argue they are being sued in their official capacities only.  As there is no evidence of an unconstitutional custom or policy, they contend they are entitled to judgment in their favor.  If the complaint is construed to include individual capacity claims, defendants alternatively argue there is no evidence of deliberate indifference to plaintiff's serious medical needs.  Finally, defendants argue there is no evidence of any personal involvement by Sheriff Atkinson in any of the incidents alleged in the complaint.

### *Individual versus Official Capacity Claims*

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the

AO72A
(Rev. 8/82)

United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendants acted under color of state law and that they violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability.  *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).  *See also Andrus v.*

-9-

*Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities.  Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

At the same time, we are charged with liberally construing pro se complaints. *See e.g. Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)(requirement that pro se complaints be construed even more liberally than counseled pleadings); *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)(finding pro se petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief"). *See also, Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997)(complaint against state officials who were sued in their official capacities was deemed amended to assert personal capacity claims, where plaintiff moved to amend complaint in response to motion for summary judgment). In responding to the summary judgment motion, plaintiff indicates he intended to sue the defendants in both their individual

-10-

and official capacities. *Resp.* at ¶ 32. We will therefore construe the complaint to be asserting both individual and official capacities claims.

### Denial of Medical Care

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). "For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of

-11-

a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, ___ F.3d ___, 2008 WL 90056, *9 (8th Cir. Jan. 10, 2008).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

By June 26th, plaintiff states his toe had become severely infected and extremely painful. *Resp.* at ¶ 23. Although he had previously asked McHenry for over-the-counter pain medication, plaintiff indicates he again asked McHenry for some Aspirin. *Id.* Plaintiff states his request was refused as was his request for a medical request form and a grievance form. *Id.* On June 29th, plaintiff maintains he showed McHenry that he had an open wound between his third and fourth toes that was bleeding, draining pus, and was extremely painful. *Id.* at ¶ 23. Despite this, plaintiff maintains McHenry refused him any over-the-counter pain medication and refused him medical treatment. *Id.*

On July 1st, plaintiff maintains he spoke with Ritter regarding his need for medical attention and for bandages and something to clean up the "running mess that the blood and pus was leaving over the cell and . . . bed." *Resp.* at ¶ 24. Plaintiff received no assistance in response and was merely told he would be seen by the nurse when she was available. *Id.*

-12-

On the evening of July 1st, plaintiff states he asked Pruitt to take him to the emergency room because of the severe pain in his foot, the bleeding and the puss. *Resp.* at ¶ 26. Pruitt responded that plaintiff needed to speak with Ritter. *Id.* However, when Ritter showed up, plaintiff states he was merely told to speak with Pruitt and fill out a medical slip. *Id.* Plaintiff states he saw neither officer again that night. *Id.*

Ritter also responded to plaintiff's grievance that day complaining that his toe had been hurting bad for five days and the pain had started up his leg. *Defts. Ex. 2 at page 2.* Plaintiff stated he needed help now. *Id.* Ritter responded that plaintiff had been looked at yesterday and to fill out a medical slip. *Id.* There is no indication in the records who examined plaintiff on June 30th. *Id.* There is no indication plaintiff was seen by jail medical personnel or other medical personnel prior to July 3rd. *Id.*

With respect to Reed, plaintiff maintains he filled out a medical slip because of the pain and drainage of blood and pus from the open wound on his foot on June 30th. *Resp.* at ¶ 28. Plaintiff indicates he was told by McHenry and Pruitt that Reed had stated he would have to wait until Monday to see her and that she was "fed up with him." *Id.* Plaintiff asserts Reed refused him medical care until the infection had become so bad she had no choice but to have a doctor look at his foot. *Id.*

While McHenry, Ritter, Moore, and Pruitt are not part of the jail's medical personnel, this fact does not preclude a finding of deliberate indifference on their part. "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). We believe there are genuine issues

-13-

of material fact as to whether or not McHenry, Ritter, and Pruitt delayed  obtaining necessary medical care for plaintiff.  There is no indication in the record that Plaintiff received any medical care prior to July 3rd.  There is no indication that McHenry, Ritter, or Pruitt contacted jail medical personnel or other medical personnel to have plaintiff's medical situation diagnostically evaluated.  Clearly, if they had contacted jail medical personnel regarding the plaintiff between June 26th and July 2nd, they would not be liable for the medical staff's decisions.  *See e.g., Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995)(prison officials who lacked medical expertise were not liable for medical staff's diagnostic decisions).  However, in this case plaintiff maintains he *showed* and/or made these defendants aware of the fact that he had an open and obvious wound on his foot that was both bleeding and had pus running from it.  Plaintiff further maintains they not only refused to him access to immediate medical treatment but also refused to provide him with a medical request form or a grievance form.  We believe this is sufficient to create a genuine issue of fact as to whether McHenry, Ritter, and Pruitt exhibited deliberate indifference to plaintiff's serious medical needs.

We similarly believe there are genuine issues of fact as to whether Reed and Moore exhibited deliberate indifference to plaintiff's serious medical needs.  According to Reed's notes after plaintiff was seen at Pro-Med the second time on July 11th, he was placed in the hospital cell on his return.  *Defts' Ex.* 3.  On July 17th plaintiff states he informed Moore that his foot was draining blood and pus and he needed cleaning materials, bandages, and to keep the wound clean.  *Resp.* at ¶ 25.  According to plaintiff, Moore commented on "how gross" and "how bad" plaintiff's foot smelled but refused any bandages and Aspirin and refused to notify the nurse.  *Id.*

-14-

There is no indication in Reed's records that she did any follow-up on plaintiff after she placed him in the hospital cell. By July 25th it appears plaintiff's condition appears to have deteriorated because he was sent to the emergency room. *Defts' Ex.* 3 at page 13.

With respect to Sheriff Atkinson, we agree there is no evidence he was personally involved in denying Plaintiff medical care or that he knew of plaintiff's serious medical needs and deliberately disregarded them. *See e.g., Vaughn v. Greene County*, 438 F.3d 845, 851 (8th Cir. 2006). Sheriff Atkinson had no personal interaction with plaintiff during his incarceration. *Id.* at 851. *See Resp.* at ¶ 27.

However, plaintiff contends Sheriff Atkinson is liable because he was responsible for the training of his staff in regard to responding to medical requests, the care of inmates in the jail, and the sanitation of the jail. *Resp.* at ¶ 27. Plaintiff maintains this training, or lack thereof, directly or indirectly, caused his pain and suffering. *Id.* In short, plaintiff maintains had jail personnel been properly trained in responding to medical requests and in caring for inmates he would not have been denied adequate medical care.

In this case, the summary judgment records contains no information on how medical requests are processed at the SCDC. It does not indicate how deputies are trained to respond to verbal requests for emergency medical care from inmates. The record contains no information regarding when medical personnel are present at the detention center, how requests are processed when medical personnel are not present, etc. We therefore believe there are genuine issues of fact as to whether a custom or policy of the Sebastian County or Sheriff Atkinson led to plaintiff's inability to obtain medical care.

-15-

AO72A
(Rev. 8/82)

## Conclusion

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 25) be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of February 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-16-

AO72A
(Rev. 8/82)